MARKMAN, J.
odissenting). I respectfully dissent. I cannot join the majority’s opinion, which would reverse the Court of Appeals, and which would deny plaintiff— who no one disputes is the biological father of the child at issue— the right to be the father of the child he has raised for over four years. Instead, the majority would leave this child without a father. In the process, the majority would render a default judgment in this case meaningless; it would condone and encourage gamesmanship by a party to a child custody proceeding; and it would allow a party to prevail, in significant part because of that party’s own delinquency in failing to participate in an earlier judicial proceeding.
BACKGROUND
Plaintiff alleges that he and defendant had a sexual relationship while defendant was still married to her ex-husband, James Charles. A child was conceived before defendant’s divorce from Charles, but born four months after the divorce. Charles, who had filed for divorce, had no knowledge of the pregnancy because defendant did not appear in the divorce action, and the default divorce judgment stated that “it further appeared] that no children were born of this marriage and none are expected....” Plaintiff and defendant lived together with the child for nearly 4V2 years after the divorce and before their separation; thereafter, defendant apparently denied plaintiff access to the *715 child. Plaintiff claims that it has now been about 2V2 years since he has seen his son.
Plaintiff filed a paternity action, but the circuit court granted summary disposition to defendant, ruling that the default divorce judgment did not amount to the prior judicial determination that Charles was not the father of the child conceived during the marriage, as required by Girard v Wagenmaker, 437 Mich 231; 470 NW2d 372 (1991), and, therefore, that plaintiff lacked standing to bring a paternity action. The Court of Appeals reversed, holding that the default divorce judgment did, in fact, constitute such a prior judicial determination.
ANALYSIS
The presumption that children born or conceived during a marriage are the issue of that marriage is deeply rooted in our statutes and has been consistently recognized throughout our jurisprudence. See In re KH, 469 Mich 621, 634-635; 677 NW2d 800 (2004). This presumption vindicates a number of interests, not the least of which include the interest of the child in not having his or her legitimacy called into question, the interest of the state in ensuring that children are properly supported, and the interest of both in assuring the effective operation of intestate succession. The presumption also reflects the recognition that “ ‘[t]here is no area of law more requiring finality and stability than family law.’ ” Id. at 635 n 27 (citation omitted). For this reason, we have held that “clear and convincing evidence” is required in order to overcome the presumption of legitimacy. Id. at 634.
The title of the Paternity Act, MCL 722.711 et seq., states that the act is intended “to confer upon circuit courts jurisdiction over proceedings to compel and *716 provide support of children born out of wedlock ... See also Van Laar v Rozema, 94 Mich App 619, 622; 288 NW2d 667 (1980) (“intent behind this statute is to provide support for illegitimate children”). The act confers standing on the father of a child born out of wedlock to sue to establish paternity. In re KH, supra at 631-632. Section 1 of the act provides the relevant definition:
(a) “Child born out of wedlock” means a child begotten and born to a woman who was not married from the conception to the date of birth of the child, or a child that the court has determined to be a child born or conceived during a marriage but not the issue of that marriage. [MCL 722.711 (emphasis added).]
Thus, there are two ways to satisfy the definition of “child born out of wedlock” for purposes of the Paternity Act: (1) a showing that the child was neither born nor conceived during the mother’s marriage or (2) a judicial determination that the child was not the issue of the marriage.
In Girard, we stated that the judicial determination referred to in the statute was a prior determination: “For a putative father to be able to file a proper complaint in a circuit court, ... a circuit court must have made a determination that the child was not the issue of the marriage at the time of filing the complaint.” Girard, supra at 242-243 (emphasis in original). The requirement of a prior determination that a child is born out of wedlock reflects a legislative recognition that paternity claims generally arise during divorce or custody disputes. In re KH, supra at 635. We have observed that this requirement suggests that the Legislature contemplated “ ‘situations where a court in a prior divorce or support proceeding determined that the legal husband of the mother was not the biological *717 father of the child.’ ” Id. (citation omitted). Such a prior determination is exactly what occurred in this case.
Defendant failed to respond to the complaint for divorce filed by her (now-ex) husband, and a default judgment of divorce ultimately was entered. It has long been the rule in this state that the entry of a default judgment has the legal effect of admitting all well-pleaded allegations. See, e.g., Lesisko v Stafford, 293 Mich 479, 481; 292 NW 376 (1940); Wood v Detroit Automobile Inter-Ins Exch, 413 Mich 573, 578; 321 NW2d 653 (1982); Kalamazoo Oil Co v Boerman, 242 Mich App 75, 79; 618 NW2d 66 (2000). In paragraphs 5 and 6 of his complaint for divorce, Charles alleged that defendant was not pregnant and that no children were born during the marriage. Because defendant never appeared, she was defaulted, the legal effect of which was her admission that she was not pregnant and that no children were born during the marriage. Although it was clearly factually incorrect that defendant was not pregnant on the date of the entry of the default divorce judgment, the legal effect of her default was an admission that she was not pregnant on the date of the divorce. Because defendant never sought to set aside the default judgment and never appealed the judgment, it continues to stand for the proposition that no issue resulted from her marriage to Charles, that is, necessarily, that any child born after the date of the divorce was a “child born out of wedlock” for purposes of the Paternity Act, MCL 722.711(a).
Moreover, the default judgment states, in pertinent part:
[I]t satisfactorily appears to this Court that there has been a breakdown in the marriage relationship to the extent that the objects of matrimony have been destroyed, and there remains no reasonable likelihood that the mar *718 riage can be preserved; it further appearing that no children were bom of this marriage and none are expected.... ” [Emphasis added.]
The majority suggests that this statement did not constitute an “affirmative finding regarding the child’s paternity,” ante at 705. I respectfully disagree. The plain language of the judgment could hardly be clearer: “no children were born of this marriage and none are expeeted[.]” Once more, “no children were born of this marriage and none are expected[.]” The trial court thus concluded, not unreasonably, that no children were born of the marriage of Charles and defendant. As such, the child later born to defendant must, for purposes of the Paternity Act, MCL 722.711(a), have necessarily been a “child born out of wedlock.”
The majority further suggests that it “cannot be reasonably asserted that there was clear and convincing evidence” to support the language in the default judgment. Ante at 706. Again, I must disagree. The proofs submitted at the hearing consisted entirely of Charles’s testimony. Charles testified under oath, among other things, that “my wife is not pregnant at this time to the best of my knowledge.” After hearing the testimony, the trial court stated:
I find from the proofs submitted there has been a breakdown in the marriage relationship to the extent that the objects of matrimony have been destroyed and there remains no reasonable opportunity for the marriage to be preserved. Accordingly, the Court hereby has signed the judgment as prepared and presented. [Emphasis added.]
In other words, the trial court considered the evidence presented at the hearing and issued its judgment on the basis of that evidence. Among the evidence presented was Charles’s express testimony that defendant was not pregnant. The language used in the default judgment is *719 a function of this evidence; there is no requirement that a pregnancy test be administered before a trial court may rely on the uncontradicted statement of the husband that his wife is not pregnant. The trial court’s order and its statement on the record are both quite clear, and completely contradict the majority’s suggestion that the judgment was not supported by clear and convincing evidence.
“The rule is well established that courts speak through their judgments and decrees . . ..” Tiedman v Tiedman, 400 Mich 571, 576; 255 NW2d 632 (1977); see also Newbold v Stewart, 15 Mich 155 (1866). With respect to default judgments, the instant Court of Appeals panel observed:
“A default judgment is just as conclusive an adjudication and as binding upon the parties of whatever is essential to support the judgment as one which has been rendered following answer and contest.” Perry & Derrick Co v King, 24 Mich App 616, 620; 180 NW2d 483 (1970). See also Schwartz v City of Flint, 187 Mich App 191, 194; 466 NW2d 357 (1991). Respecting defaults, in their factual as well as legal components, is a function of the policy of respecting the finality of judicial judgments. See, e.g., Nederlander v Nederlander, 205 Mich App 123, 126; 517 NW2d 768 (1994). If the trial court’s equivocation about there merely “appearing” to be no children of the marriage did indeed reflect the court’s lack of opportunity to consider the factual matter fully, it nonetheless reflected no lack of legal authority behind the substance implicit in that unchallenged ruling. [Unpublished opinion per curiam of the Court of Appeals, issued August 23, 2005 (Docket No. 252840), slip op at 2.]
The Court of Appeals analysis regarding the force and effect of default judgments was entirely correct. Defendant’s ex-husband testified in the divorce action that there were no children produced as a result of the marriage, and defendant did not appear to contest that *720 representation, which was the legal equivalent of her admission of its truth. The judgment of divorce recognized that no children resulted from the marriage, i.e., that Charles was not the father of any children. It is difficult to imagine evidence more “clear and convincing” of a fact than one party’s assertion of that fact under oath and the opposing party’s admission of that fact. Accordingly, the legal presumption that a child is factually the offspring of the mother’s husband was addressed and fully repudiated in this case by the default judgment of divorce. The Court of Appeals, therefore, did not err in concluding that plaintiff had standing to bring this paternity action.[1]
Moreover, I note that a finding that defendant was not pregnant with Charles’s child was, in fact, necessary for the trial court to have entered the default judgment of divorce. MCL 552.9f sets forth certain procedural requirements in an action for divorce and provides, in pertinent part:
No proofs or testimony shall be taken in any case for divorce until the expiration of 60 days from the time of filing the bill of complaint, except where the cause for divorce is desertion, or when the testimony is taken conditionally for the purpose of perpetuating such testimony. In every case where there are dependent minor children under the age of 18 years, no proofs or testimony shall be taken in such cases for divorce until the expiration of 6 months from the day the bill of complaint is filed. [Emphasis added.]
*721 Under this provision, no proofs or testimony can be heard in a divorce action in which children are involved until at least six months from the time of the filing of the complaint.[2] Charles filed the divorce action on June 23, 1998, and the judgment of divorce was entered on November 2, 1998. Thus, the judgment of divorce granted to Charles and defendant was entered just over four months from the time of the filing of the complaint for divorce. Because a court may grant a divorce after only 60 days have elapsed when no minor children are involved, but may not grant a divorce until six months have elapsed when minor children are involved, the trial court necessarily must have concluded from the evidence presented, i.e., Charles’s testimony, that defendant was not pregnant and, therefore, that no issue resulted from the marriage.[3] While later events subse *722 quently proved this conclusion incorrect, they do not alter the fact that the trial court did, in fact, enter this finding. A court issuing a default judgment can only work with the information actually presented to it, but this does not alter the legal effect of its factual conclusions.
In reaching its conclusion, the majority renders the default judgment in this case essentially meaningless. The majority suggests, in effect, that a judicial determination requires that the court, in its decision-making, be fully aware of all the facts. However, in a default setting, where one party has failed to appear, it is obviously not always possible for the court to be fully aware of all the pertinent facts. After all, one side has chosen to deprive the court of the facts of which its witnesses presumably are aware. However, this has never been thought to relieve the trial court of its obligation to render a “determination” in such a case on the basis of as many facts as have been made available to the court. This is simply in the nature of default judgments. It is for this reason, among others, that parties to judicial proceedings would be prudent to show up for such proceedings.
The majority, wrongly in my view, characterizes the trial court’s order as an equivocation because of its references in its order to “it satisfactorily appears” and “it further appearing... .” Quite apart from the fact that such language is entirely unremarkable injudicial orders, and has never before been thought to evidence “equivocation,” the reality is that a prudent court could well choose to employ such language in virtually every order given that it is not omniscient and can only render decisions on the basis of evidence properly *723 before it. The majority would transform entirely innocuous and customary language, routinely employed by courts, probably from time immemorial, into language pregnant with meaning, showing hesitation and uncertainty on the part of the court. Better apparently for the court to affect an all-knowing certainty of facts than to reveal the ordinary cautiousness of a person who understands the fallibilities of the judicial process. The majority’s deconstruction of court orders notwithstanding,[4] whether a court states that something “appears to be,” rather than that it “is,” does not deprive an order of the full force of judicial authority.[5] Rather, a judgment— a default judgment no less than any other— represents to the world a binding determination concerning the issues pertinent to the judgment, and persons may not avoid the legal effect of such a judgment by attempting to relitigate the facts that underlie it.[6]
*724 Here, defendant failed to appear in the divorce action. Had she done so, she could have contested the trial court’s conclusion that “no children were born of this marriage and none are expected[.]” Yet, by failing to appear, she failed to contest that conclusion, and the court entered a judgment based on the best information available to it at the time. Because the power to correct this determination rested at all times solely in defendant, she in particular should now be bound by that determination, rather than being allowed to profit from her own dereliction, as the majority permits— if, indeed, denying her son the right to a father he has known since birth can be considered “profiting.” The majority thus allows a party to prevail in this case in significant part because of that party’s own delinquency in failing to participate in an earlier judicial proceeding.
As already noted, one of the Legislature’s stated purposes in enacting the Paternity Act was “to compel and provide support of children born out of wedlock ....” Title of 1956 PA 205, MCL 722.711 et seq. The majority’s decision today frustrates that purpose in the case of this child. In reversing the Court of Appeals, the majority ensures that plaintiff has no legal obligation to provide support for this child. Moreover, because it seems clear that defendant has no intention of bringing a claim for support against her ex-husband, and if she ever did, could not prevail in that claim because Charles is obviously not the child’s father, the majority also ensures by its decision today that this child will not receive support from any father. In other words, were defendant to seek support from her ex- *725 husband, her child would almost certainly become— even under the majority’s holding— a “child that the court has determined to be a child born or conceived during a marriage but not the issue of that marriage,” MCL 722.711(a), affording plaintiff unquestionable standing to bring a paternity action. Clearly, as shown by the facts of this case, defendant has no interest in that outcome. As such, the majority provides defendant with its blessing to neglect to seek the support to which her child is entitled, solely for reasons of legal strategy. Thus, the majority sanctions defendant’s legal gamesmanship at the expense of the well-being of her child.
This result is especially troubling in light of the continuing concern on the part of both the public and the members of this Court about fathers unwilling to financially support their children. The majority here rejects a father who welcomes the opportunity to take responsibility for his child, and who has acted as a father for more than four years, in favor of no father at all.[7]
*726 Although I believe strongly in the importance of the presumption of legitimacy, that presumption has been rebutted by clear and convincing evidence in this case. Defendant’s ex-husband alleged that there were no children produced as a result of the marriage, and he testified to that effect at the divorce hearing. Defendant failed to appear at the hearing, which constituted a legal admission that there were no children of the marriage. The divorce judgment asserted that no children resulted from the marriage and, therefore, that Charles was not the father of any children. After the child was born, a birth certificate was prepared identifying plaintiff as the father. An affidavit of parentage was signed by the parties.[8] The parties lived together with the child as a family for over four years. And defendant has never denied that plaintiff is the father of her child. Plaintiff was a father to a little boy— a little boy who stands to suffer greatly from the majority’s decision today, both financially and emotionally. Yet the majority finds that there is no “clear and convincing” evidence that Charles was not the father of defendant’s child. I could not disagree more strongly.
CONCLUSION
In adopting defendant’s position that the divorce judgment was insufficient to establish that her child was born out of wedlock, the majority renders a default *727 judgment in this case meaningless; it condones and encourages gamesmanship by a party to a child custody proceeding; and it allows a party to prevail, in significant part, because of that party’s own delinquency in failing to participate in an earlier judicial proceeding. For the foregoing reasons, I would affirm the decision of the Court of Appeals and hold that plaintiff has standing to pursue a paternity action.
CAVANAGH, J., concurred with MARKMAN, J.

 The majority views as significant the fact that, along with the finding that no children were born to or conceived by the parties during their marriage, the circuit court did not also make an explicit finding that a child was conceived during the marriage. Ante at 706. However, given the determination of the trial court— that “no children were bom of this marriage and none are expected”— it is nothing more than a matter of logic that the child here was “conceived during a marriage but not the issue of that marriage.” MCL 722.711(a).

 MCL 552.9f does provide an exception:
In cases of unusual hardship or such compelling necessity as shall appeal to the conscience of the court, upon petition and proper showing, it may take testimony at any time after the expiration of 60 days from the time of filing the bill of complaint.
However, there is no indication whatsoever that this exception was invoked in the instant divorce.

 The majority recognizes that a “ ‘default judgment is just as conclusive an adjudication and as binding upon the parties of whatever is essential to support the judgment as one which has been rendered following answer and contest,’ ” ante at 705, quoting Perry & Derrick Co v King, 24 Mich App 616, 620; 180 NW2d 483 (1970). However, the majority proceeds promptly to disregard this basic principle by suggesting that the judgment of divorce was not a sufficient “court determination.” Ante at 705. Yet, as noted above, under MCL 552.9f, the finding that the parties produced no issue was “essential to support the judgment.” Perry, supra at 620. Moreover, had defendant appeared at the divorce proceeding, an answer to the question whether it had been shown by clear and convincing evidence that Charles fathered no children would have been “rendered following answer and contest.” Id. Because defendant did not appear in that action, the question was decided against her. As such, the fact that Charles did not father a child with defendant was *722 definitively resolved by the default judgment of divorce. The question of what legal standard should have been used to resolve the underlying question, in the absence of an appeal of that issue, is irrelevant to the fact that the judgment resolves the question.

 One wonders whether orders in which courts “believe” or “find” a particular fact satisfies the requirements of certitude established today by the majority. Moreover, it is noteworthy that the standard language this Court employs in denying a motion for reconsideration asserts that the motion is being denied because “it does not appear” that the initial order was entered erroneously. See, e.g., McDanield v Hemker, 714 NW2d 301 (2006). In light of this Court’s obvious “equivocation” in such circumstances, one wonders whether parties who have received such orders are entitled to successive motions for reconsideration until we are certain enough to deny such motions unequivocally.

 The practical consequences of the majority’s approach would be that default judgments would effectively always he in suspense pending additional information being made available to the judicial system, most typically, perhaps, from the defaulting party itself. While default judgments rarely constitute the ideal means of rendering a judicial “determination,” such a procedure nevertheless is necessary to the orderly administration of justice, and the factual determinations made in accord with a default are just as binding as facts determined in judgments entered with the benefit of advocacy on both sides.

 In arguing that the pertinent language of the divorce judgment does not constitute a sufficient determination that Charles was not the father *724 of her child, plaintiff is essentially mounting a collateral attack on the divorce judgment. Because defendant did not seek leave to appeal the trial court’s order in the divorce proceeding (or even participate in the proceeding), she should not be allowed to collaterally attack that order in this case. See People v Sessions, 474 Mich 1120 (2006).

 The majority argues that I am incorrect to suggest that its decision leaves this child without a father, and instead asserts that Charles is the child’s legal father. Ante at 707. However, it is the majority that is, tragically, incorrect. The plain language of the judgment states that Charles is not the father of any children borne by defendant. Because this judgment is res judicata of the issue as between Charles and defendant, defendant would have to take additional action (for instance, bringing a motion to revise or alter the judgment under MCL 552.17[1]) in order for the status quo to be altered and Charles to be declared the child’s father. Charles doubtlessly would be shocked to learn that the majority believes he is the father. He is not, either biologically or legally.
Moreover, as I have pointed out elsewhere, there is no chance that this status quo will ever be altered because: (a) defendant almost certainly will never bring a motion to revise or alter, knowing that it would be successfully challenged by Charles and that this would allow plaintiff to relitigate his paternity, something that defendant is plainly not prepared to allow; and (b) it is clear to everyone, the majority excepted, that the *726 status quo accurately reflects the truth of the situation, namely that Charles is not the father of the child.

 The affidavit provides that the parties “consent that the name of the natural father may be included on the certificate of birth for the child” and that “the mother states that she was not married when this child was born or conceived; or that this child though born or conceived during marriage, is not an issue of that marriage as determined by a court of law.”